IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE E. KRIDER,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　Defendant.<br>_____/ | Case No. 08-cv-1846-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>15-DAY DEADLINE TO FILE OBJECTIONS |

Plaintiff Carrie E. Krider ("Claimant" or "Plaintiff") seeks judicial review of the administrative decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. On December 1, 2008, Plaintiff filed her complaint initiating this review in the United States District Court for the Eastern District of California. (Doc. 2).

Plaintiff filed her opening brief on August 31, 2009.[1] (Doc. 12). The Commissioner filed his opposition brief on October 30, 2009. (Doc. 16).

---

[1] Plaintiff refers to her opening brief as a motion for summary judgment,. (Doc. 16). Although briefs filed in Social Security cases previously were deemed summary judgment motions, for several years this Court has termed the documents as "opening briefs," "responses" or "oppositions," and, "reply briefs." This memorandum opinion and order continues the more recent trend.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

On February 17, 2006, Plaintiff filed an application for disability insurance benefits under Titles II and XVIII of the Social Security Act ("Act"). AR 8, 99-104. Plaintiff alleged that she had been under a disability since July 10, 2004, due to disabling physical problems. Id. at 99. After initial denial of her request for benefits by the Agency, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 78. On April 22, 2008, the ALJ held a hearing, and on July 24, 2008, denied benefits. Id. at 5-22. Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Id. at 22. The Appeals Council denied review on October 2, 2008. Id. at 1-4.

Hearing Testimony

On April 22, 2008, a hearing was conducted before ALJ Michael J. Haubner in Fresno, California. AR 23. Plaintiff and her attorney, Robert Ishikawa appeared at the hearing. Id.

Plaintiff testified she was born on May 19, 1958 (46 at time of claimed onset of disability). AR 29. She was a high school graduate and had completed one year of college. Id. Plaintiff stopped working on July 10, 2004 (claimed onset date) but stated she last looked for full-time work in 2006. Id. at 30. In her last job, Plaintiff worked as a prison librarian, handing out books to inmates. Id. at 42. She quit that job due to injury and on the advice of her doctor, Dr. Capen. Id. at 30-31.

Plaintiff testified she lives in a house (AR 32) with her husband and two cats. AR 31. Plaintiff is right-handed. AR 30. Her husband works full-time. AR 31. She feeds and waters the cats but does not clean the litter box herself. Id. She is able to take care of personal tasks like brushing her teeth, getting dressed and showering. AR 32. When her back is "out" she has trouble getting in and out of the shower and has to be assisted by her husband. Id.

Plaintiff is able to cook meals about twice a week and do simple food preparation each day. AR 33. She cleans up and does the dishes but does not take out the trash. Id. She sweeps and vacuums the house once a week and also dusts furniture, mops the floor and does laundry once each week. Id. at 34. She does not iron and does not wash windows. Id.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff spends most of her time watching television and reading. AR 35. She estimates she watches television about five hours a day and reads two hours a day. Id. She states she uses the computer about 20 minutes each day and talks on the telephone a couple of times each day. Id. at 35-36. Plaintiff drinks a couple of beers or a couple of glasses of wine five times a week. AR 30. Plaintiff quit smoking in July 2007, and tries to walk on a daily basis but stated that lately she has been restricted to walking only four times a week (for a distance of about half a block) due to her back condition. AR 39-40.

Plaintiff has a driver's license with no restrictions. AR 31. She drives an automatic transmission car about twice a week. Id. at 32. Plaintiff stated that she shops for groceries with her husband twice a week. AR 36. She does other shopping about once a month. Id. She belongs to no clubs or other organizations. Id.

Plaintiff described numerous physical problems, including carpal tunnel in her right wrist, neck problems, disk bulging, low-back trouble, rhomboid trapezius strain, right and left upper extremity ulnar neuropathy (arm and elbow problems). AR 36-37. She stated she could lift about 5 pounds. Id. at 37. She has difficulty reaching overhead and can only do so occasionally but she can comb her hair. Id. She can reach out in front of herself and grab unless her back is out. Id. Her carpal tunnel affects her ability to grip and grasp. Id. at 37-38. She can only grip things such as pencils or cups for about 15 minutes at a time after which she must rest her hand for 30 minutes before attempting to do so again. Id. at 38.

Plaintiff estimates she has to lie down and elevate her feet for about one hour each day. AR 38. The pain she experiences from her maladies makes it difficult for her to concentrate and pay attention mentally to anything for more than 30 minutes. AR 39. She stated her condition has worsened since 2004. Id. She complies with her treatment and takes her medications as directed. Id.

Medical Record

Plaintiff injured herself on December 2, 2002, while working as a librarian at the Pleasant Valley prison in the California Department of Corrections ("DOC") when she was pulling books and newspapers from a cabinet. AR 240. The cabinet began to fall and she used her left arm to try to

stop it. Id. She was examined initially by a chiropractor, Dr. Craig Little at which time she complained of cervical pain and stiffness, more on her left upper extremities than her right, with pain radiating to her lower scapula. Id. Also, she complained of lower back pain that was occasional and intermittent and constant pain in her cervical spine. Id. Dr. Little found a partially unresolved cervical and lumbosacral strain and proscribed physical therapy. Id. at 241. His prognosis rated Plaintiff's chances to return to her pre-injury status as "excellent." Id.

Shortly thereafter, Plaintiff's primary treating physician at that time, Dr. Paul Griffin, ordered an x-ray of her cervical spine. AR 250. The radiologist interpreted the result as "unremarkable." Id. Dr. Griffin saw Plaintiff in March 2003 and characterized her physical condition as improved. Id. at 244.

Plaintiff's pain worsened and she was examined subsequently by Dr. Robert Mochizuki. AR 291. Dr. Mochizuki diagnosed cervical strain, rhomboid and trapezius strain, and possible cervical rediculopathy. Id. at 293. He recommended an MRI of the cervical spine. Id. In the August 6, 2003 follow-up examination following the MRI, Dr. Mochizuki recommended that Plaintiff take Daypro and Flexeril. AR 290. He stated that she could continue her "usual and customary work activities." Id.

In October 2003, Dr. Griffin referred Plaintiff to neurologist Dr. Frank Cantrell for further examination.[3] AR 342. Dr. Cantrell diagnosed left neck pain due to a cervical straining injury, right low back pain due to a lumbar straining injury, increased dorsal kyphosis and slight probable congenital scoliosis. Id. at 344. Also, he diagnosed clubbing and headaches (probable migraine). Id. He prescribed physical therapy, Motrin and Darvacet-N, and ordered an MRI of the lumbar spine. Id.

In a December 2003 follow-up examination, Dr. Cantrell noted that Plaintiff's recent surgery for carpal tunnel release had worsened the pain in her right hand and precluded her from heavy lifting of more than 20 pounds and from repetitive gripping and grasping. AR at 340-41.

---

[3] Dr. Cantrell had treated Plaintiff in 2000 for pain in her right forearm, wrist and hands. AR 246-66. In 2003, she was diagnosed with carpal tunnel syndrome. Id. at 329. However, after her surgery in December 2003, her surgeon, Dr. John Larsen, M.D., released her to full duty with no limitations or restrictions. Id. at 320.

4

In January 2004, Dr. Cantrell noted tenderness in Plaintiff's right deltoid tendon, an inability to place her hand behind her back and that her right epicondylar area was tender. AR 336-37. He continued her prescription of Flexeril and Darvocet and continued to restrict her from heavy lifting and work that required her to lift her arms over head. Id. Nevertheless, in a March 2004 letter to the DOC, Dr. Cantrell reviewed Plaintiff's job description of library technician assistant and stated that it was "well within her work limitations" because "[i]t does not require repetitive forceful gripping and grasping." AR 334.

In February 2004, Dr. James Strait performed an agreed medical examination of Plaintiff in connection with her claim for benefits under the California workers' compensation scheme. AR 390. Plaintiff complained of numerous problems including: a dull pain in her left posterior cervical region, radiating down her back when it worsened; a popping sensation and tenderness in her shoulder blade; posterior headaches; neck pain caused by repetitive circumlocution and prolonged cervical flexion or extension; and complained that repetitive use of her left upper extremities likewise brought on pain. Id. Plaintiff described pain in her right arm, wrist and hand also, including: tenderness in the palm, forearm and elbow; intermittent pain with repetitive use; tingling in her arm and hand when she wakes up that fades (improved after her tunnel release surgery); and noted that her thumb and index finger do not coordinate well which resulted in her having difficulty picking up objects. Id.

Dr. Strait diagnosed cervical sprain superimposed on minor degenerative disc disease C6-7, post-status release surgery carpal tunnel syndrome and chronic tenosynovitis of the right hand and arm. AR 394. He opined that her hand and arm problems related to a continuous trauma injury from her work activities at the DOC, while her neck and upper back problems related to the injury sustained from the December 2002 incident. Id. at 394-95. He recommended Plaintiff do no heavy work and no repetitive heavy lifting or heavy grasping. Id. at 396. He believed Plaintiff could return to her former job with no additional vocational rehabilitation. Id.

Later in a June 2004 follow-up examination, Dr. Cantrell noted Plaintiff continued to have right forearm pain but stated that she could continue in her work. AR 330.

In August 2004, plaintiff's treating physician, Dr. Daniel Capen, noted numerous physical

5

complaints relating to Plaintiff's neck, upper back and right forearm, wrist and hand. AR 498-99. He diagnosed severe discogenic scoliosis, acute lumbar sprain/strain syndrome, cervical spine strain and carpal tunnel syndrome - post-status surgery. Id. at 502. As a result of her maladies, Dr. Capen stated that Plaintiff was temporarily, totally disabled as of July 24, 2004. Id. at 502-03. In follow-up examinations in September and October 2004, Dr. Capen reiterated his diagnosis and his characterization of Plaintiff as temporarily, totally disabled. Id. at 482, 490.

In a November 2004 examination, Dr. Capen specified that Plaintiff's cervical spine and upper extremity problems precluded jobs involving overhead work and heavy lifting, as those requiring gripping and heavy grasping because he noted that Plaintiff had lost 50% of her pre-injury capacity for lifting, gripping and grasping. AR 478. He stated further that she could not return to her former work. Id. at 479. During numerous additional examinations through February 2007, Dr. Capen stated that Plaintiff remained temporarily, totally disabled due to her neck, upper extremity and back problems. Id. at 428-76.

Dr. Strait saw Plaintiff again in January 2005. AR 382. He reiterated his previous diagnosis from February 2004, but expressed no opinion on her work status because he hadn't seen all of the recent medical records. In a January 27, 2005 letter to the State Compensation Insurance Fund, he noted no new injuries since Plaintiff's February 2004 examination and stated that his opinion concerning her ability to work was unchanged. Id.

Dr. Capen referred Plaintiff to Dr. John Larsen in April 2005, for wrist and hand problems. AR 400. Dr. Larsen recommended arthroscopic surgery to improve Plaintiff's carpal tunnel symptoms. Id. To the contrary, Dr. Strait reported to the State Compensation Insurance Fund his belief that the surgery would not produce improvement. Id. at 590. Hand specialist, Dr. Leonard Gordon examined Plaintiff in May, 2006 and agreed with Dr. Strait that the surgery recommended by Dr. Larsen did not seem warranted. AR 515. However, he stated that a re-release procedure on the right hand/wrist might improve Plaintiff's condition. Id. He agreed that for purposes of workers compensation, Plaintiff was temporarily, totally disabled due to her carpal tunnel syndrome. Id.

In June 2006, Dr. Scott Baden performed an Independent Medical Examination of Plaintiff. AR 516-31. Dr. Baden ran numerous tests (Id. at 523-27) and concluded that Plaintiff's cervical and

lumbar problems did not prevent her from doing her previous work as a library technician. Id. at 530. However, he stated that her carpal tunnel syndrome did prevent such work. Id. He described this disability as permanent. Id. at 531.

In July 2006, Plaintiff was examined by Dr. Benjamin Chang at the behest of the California State Department of Social Services. Dr. Chang noted Plaintiff's cervical spine and lumbar spine ranges of motion were slightly limited with mild tenderness. AR 545. He found the range of motion for her upper extremities, shoulders, elbows, hips, knees and ankles to be normal, but found her right wrist range of motion slightly reduced. Id. at 546. Her surgical scar on her right wrist was mildly tender with Tinel's sign and her hand grip was slightly diminished with a somewhat diminished sensation. Id. at 547. He made the following conclusions: (1) chronic mechanical low back pain and neck pain without radiculopathy; and (2) right carpal tunnel syndrome, post-status surgery. Id. He concluded that Plaintiff's functional capacity required: (1) that she could not perform work requiring frequent bending and lifting; (2) she could lift and carry 20 pounds occasionally and 10 pounds frequently; (3) she could stand and walk six hours of an eight hour day with normal breaks; (4) she could sit without restriction; (5) she could kneel, squat, and climb stairs occasionally; and (5) she could perform manual manipulation that included occasional handling, grasping, feeling and fingering with her right hand. Id.

Follow-up examinations with Dr. Gordon throughout 2007, document that Plaintiff's wrist healed well following her re-release surgery. AR 595-604. In October 2007, Dr. Gordon stated Petitioner's condition had improved "a lot" but the next month, concluded that she was not able to do her past work and needed rehabilitation. Id. at 595, 596.

After her final examination with Dr. Strait in January, 2008 (prior to the April, 2008 Agency hearing), he agreed with Dr. Gordon that Plaintiff had been temporarily totally disabled since May 2006. AR 575.

ALJ Findings

The ALJ evaluated Plaintiff pursuant to the customary five-step sequential evaluation. In this five-step process, the ALJ determined first that Plaintiff had not engaged in substantial gainful activity since her claimed date of onset (July 10, 2004). AR 10. Second, the ALJ found that Plaintiff

7

had severe impairments consisting of cervical spine strain, lumbar sprain with fissures and facet arthritis, status-post surgery carpal tunnel syndrome, bilateral cubital tunnel syndrome, rhomboid and trapezius strain and "mild" right and left upper extremity ulnar neuropathy.  AR 10.  However, in the third step of his evaluation, the ALJ determined that these impairments, or a combination of these impairments, did not meet or exceed the level required under Agency guidelines for presumed disability.  Id. at 11.

In the fourth step of his analysis, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined by 20 C.F.R. § 404.1567(b) but that she had to avoid heavy lifting and was unable to perform repetitive heavy grasping with her right upper extremity.  AR 11.  Based on this RFC finding and citing the opinion of the Vocational Expert ("VE") at the hearing, in the fifth step of his analysis, the ALJ concluded that Plaintiff was not precluded from performing her past relevant work as a prison library technician assistant.  Id. at 20.  Alternatively, the ALJ concluded that Plaintiff could perform other work in the national economy.  Id.  Finally, the ALJ found that Plaintiff's description of her symptoms and limitations was not fully credible.  Id. at 18-20.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401-402 (1971), but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  E.g., Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper

legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, the claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). The claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) had a medically determinable and severe physical impairment (degenerative arthritis of the lumbar spine); (3) did not have an impairment which meets or is equal to one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could perform her past work as an office assistant and as a prison librarian as those jobs are performed in the national economy; and (5) she retained the RFC to perform work-related activities except for work involving prolonged sitting or standing, frequent bending, stooping or climbing, or lifting in excess of 35 pounds. AR 16-18. The ALJ then determined that Plaintiff was not under a "disability" as defined in Act.

Plaintiff challenges the ALJ's determination at Steps 4 and 5 of the sequential evaluation process, where an individual's ability to perform work is assessed based on her RFC. Plaintiff raises two claims of error. First, she alleges the ALJ failed to properly assess the opinions of the physicians. Second, she asserts the ALJ improperly relied on the opinion of Dr. James L. Strait, an

---

[4] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

9

agreed medical examiner who evaluated Plaintiff for purposes of the California workers' compensation system, in violation of the principles outlined in <u>DeRoisiers v. Secretary of Heath and Human Services</u>, 846 F.2d 573, 576 (9th Cir. 1987).

## DISCUSSION

### A. The ALJ Properly Relied on Dr. Strait's Opinions

In finding Plaintiff not disabled under the Act, the ALJ cited, prominently, the medical opinions of Dr. James Strait, M.D., who evaluated Plaintiff for purposes of disability under the California workers' compensation system. During examinations in February 2004 and January 2005, Dr. Strait determined that Plaintiff was restricted from "heavy work" and "repetitive heavy lifting and grasping" but could, nevertheless, return to her former work without vocational rehabilitation. <u>See</u> AR 380, 395-96. The ALJ stated he gave "very great weight to Dr. Strait's opinion because he was acting in the unbiased capacity of agreed examiner, and had examined the claimant on several occasions." <u>Id.</u> at 12. The ALJ further noted that Dr. Strait was a specialist who had the opportunity to review the full record in Plaintiff's workers' compensation case and believed his determinations were the most consistent with the objective evidence. <u>Id.</u>

Plaintiff contends that the ALJ's reliance on Dr. Strait's opinions was error because he evaluated Plaintiff for workers' compensation and that his reports only "preclude plaintiff from the performance of heavy lifting and grasping" which "in the workers' compensation arena does not mean, and is not consistent with, light work as defined in the Social Security system" because such opinions apply to a different analytical scheme and are not relevant to the assessment of disability under the Social Security system. (Doc. 16 at 4.) In support, Plaintiff cites <u>DeRosiers</u>, 846 F.2d 573. In response, Defendant argues that Dr. Strait made evaluations relevant to an analysis of disability under the Agency regulations and, therefore, the ALJ's reliance on his opinion was not error. (<u>See</u> Doc. 18 at 9-10.)

In <u>DeRosiers,</u> the Court of Appeals held that the ALJ erred in basing his claim of not-disabled on opinions from doctors who assessed the claimant under the California workers' compensation scheme because they considered only whether Plaintiff was capable of "heavy work" and did not consider whether the claimant's RFC allowed him to do light work under Agency

guidelines.  See 846 F.2d at 576.  Here, a close read of the decision in DeRosiers indicates that consideration of a doctor's opinion related to workers' compensation is not per se error.  Rather, the issue is whether the ALJ properly considered and applied that opinion in assessing disability under the Agency regulations.  Id.  Here, the ALJ considered Dr. Strait's opinion particularly as to whether Plaintiff's physical problems prevented her from performing her past relevant work as a prison library technician.  Considering the opinion in that context is relevant to the Step 4 assessment of disability under the Agency guidelines and was not, per se, contrary to the reasoning in DeRosiers.  As a result, consideration of Dr. Strait's opinions in assessing Plaintiff's claims of disability is not, in and of itself, improper.

B.  The ALJ Properly Assessed the Physicians Opinions in Denying Benefits

Dr. Strait opined in his February 2004 examination that Plaintiff's condition involved a cervical sprain and "minor" degenerative disc disease at C6-7 and carpal tunnel syndrome.  AR 394.  He prescribed no heavy work, no repetitive heavy lifting or heavy grasping but believed Plaintiff could return to her former work as a librarian with no need for vocational rehabilitation.  Id. at 395-96.  The vocational expert ("VE") described this position as "light and skilled."  Id. at 43.  Dr. Strait reiterated these findings following a January, 2005 follow-up examination.  Id. at 380-86.

Plaintiff asserts that the opinion of Dr. Benjamin Chang is inconsistent with Dr. Strait's opinion, and that the ALJ failed to properly credit Dr. Chang's opinion.  To this end, she argues that when Dr. Chang's opinion and the information from the VE are considered together,[5] the Court must conclude that she could not perform any work and, thus, is disabled within the meaning of the Act.  (See Doc. 16 at 5-6.)  More particularly, Plaintiff asserts that the ALJ's determination that she was not disabled was tantamount to a rejection of Dr. Chang's opinion without providing specific and legitimate reasons for doing so.  (See Doc. 16 at 6.)

The Court disagrees.  As already recounted, based on his evaluations, Dr. Chang

---

[5] At the administrative hearing, the ALJ put several hypotheticals to the VE concerning Plaintiff's functional restrictions.  One hypothetical was predicated on Dr. Chang's findings.  AR 46.  The VE concluded that the functional restrictions found by Dr. Chang as the VE understood them would not only prevent Plaintiff from performing her past relevant work but also other work in general, such as ushering and being a parking lot attendant.  Id.  In particular, the VE stated that the need for "constant grabbing of tickets and tearing" would prevent Plaintiff from performing the job of usher.  Id.

11

determined that Plaintiff could do no work requiring frequent bending and lifting, but also found that she could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk for 6 hours in and 8 hour day with normal breaks, could sit without restriction, could kneel, squat and climb stairs occasionally, and had manipulation limits which included occasional handling, grasping, feeling and fingering with her right hand. AR 547-48.

"Light work" is defined by 20 C.F.R. § 404.1567(b) under the Agency guidelines as that which requires "lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds." In addition, "frequent lifting and carrying" requires that the individual be able to stand or walk approximately 6 hours in and 8 hour day. Social Security Ruling ("SSR") 83-10. Although Dr. Chang placed "manipulative limitations" on Plaintiff's work ability including only occasional handling, grasping, feeling and fingering with her right hand, and although "light work" under the Agency rules requires "use of arms and hands to grasp and to hold and turn objects, . . . they generally do not require use of the fingers for fine activities to the extent required in much sedentary work." Id. Seen in this light, the ALJ's conclusion that Dr. Chang's opinion is consistent with the ability to perform light work is reasonable and comports with Agency guidelines for the physical requirements for such work. See AR at 17; see also 20 C.F.R. § 404.1567(b) and SSR 83-10.

In essence, Plaintiff is arguing that Dr. Strait's opinion conflicts with the VE's interpretation of Dr. Chang's findings. This is not the same as a rejection of Dr. Chang's opinion. In fact, Dr. Chang made no assessment of Plaintiff's ability to work. The ALJ is not obligated to either call a VE to testify or accept his testimony. Gomez v. Chater, 74 F.3d 967, 972 (9th Cir. 1996). The Court concludes that the opinions of Drs. Strait and Chang are not inconsistent and provide substantial evidence supporting the ALJ's conclusion that Plaintiff could perform other light work in the economy (Step 5) and, thus, is not disabled under the Act.

Finally, the Court notes numerous findings by Plaintiff's treating physician, Dr. Capen, that she was "temporarily totally disabled," as well as a finding by another examining physician, Dr. Baden, that Plaintiff's carpal tunnel syndrome (though not her neck and back problems) rendered her permanently incapable of performing her past work. As noted by the ALJ, these opinions relate to

Plaintiff's ability to perform her past work and none can be fairly characterized as an opinion on whether Plaintiff could perform any work under the Agency guidelines. Thus, these opinions do not provide great insight, particularly at Step 5, when determining whether Plaintiff is capable of performing any work in the national economy. In fact, neither doctor professes any specific opinion on her ability to perform work other than her past work. Notably, Dr. Strait opined that Plaintiff's maladies did not prevent her from returning to her previous work.

Thus, the opinions of Drs. Capen, Baden and even Dr. Strait do not address the question of Plaintiff's ability to perform other work in the national economy (Step 5). In light of Dr. Chang's opinions of Plaintiff's physical condition and his determination of her functional capacity, the ALJ's conclusion that Plaintiff retains the RFC to perform other work is based on substantial evidence in the record and is supported by the "light work" requirements found at 20 C.F.R. § 404.1567(b) and SSR 83-10.[6]

## **CONCLUSION**

For the reasons discussed above, this Court RECOMMENDS:

1.   Plaintiff's Social Security complaint BE DENIED, and;

2.   That Judgment be entered for Defendant Michael J. Astrue and against Plaintiff Carrie E. Krider.

These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. No later than fourteen days (14) after service of these Findings and Recommendations, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served no later than seven (7) days after filing of the objections and otherwise in compliance with this Court's Local Rule 304(d). A

---

[6] The ALJ determined that Plaintiff's symptom testimony was not credible but notes that he gave a detailed three-page explanation for so finding. See AR 18-20. Plaintiff does not contest this finding in his brief and, thus, the Court has not addressed this issue on appeal.

copy of these responses shall be served on the Magistrate Judge.  The District Judge will review the Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 19, 2010**                                                                 /s/ Jennifer L. Thurston
                                                                                              UNITED STATES MAGISTRATE JUDGE